## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

D.R.B.,[1]

       Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,

       Defendant.

Case No. 21-2143-DDC

## <u>MEMORANDUM AND ORDER</u>

Plaintiff D.R.B. seeks judicial review under 42 U.S.C. § 405(g) of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, as amended.  Plaintiff has filed a brief asking the court to reverse the Commissioner's decision denying her claim and remand her claim to the Commissioner with directions to award her benefits.  Doc. 10 at 27.  The Commissioner has filed a response brief, opposing plaintiff's request for judicial review and asking the court to affirm the Commissioner's decision.  Doc. 14 at 19.  This matter ripened for decision when plaintiff filed a reply brief on November 8, 2021.  Doc. 15.  Having reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision denying plaintiff benefits.  The court explains why, below.

---

[1]     The court makes all its "Memorandum and Order[s]" available online.  Therefore, as part of the court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to caption such opinions using only plaintiff's initials.

## I.      Factual Background and Procedural History

On December 14, 2018, plaintiff applied for Disability Insurance Benefits and

Supplemental Security Income under Titles II and XVI of the Social Security Act.  Doc. 9 at 20

(AR 15).  She alleged disability beginning on August 23, 2017.  *Id.*  The Commissioner denied

plaintiff's claim initially on June 14, 2019, *id.* at 110–13 (AR 105–08), and again denied the

claim upon reconsideration on December 26, 2019, *id.* at 117–28 (AR 112–23).  Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 129–30 (AR 124–25).

The ALJ conducted a hearing on October 28, 2020, where plaintiff appeared and testified.  *Id.* at

20, 36–55 (AR 15, 31–50).

 On November 25, 2020, the ALJ issued a written decision concluding that plaintiff was

not disabled, as the Social Security Act defines that term, from August 23, 2017, to the

decision's date.  *Id.* at 17–29 (AR 12–24).  Plaintiff then filed an appeal with the Appeals

Council of the Social Security Administration.  *Id.* at 12–13 (AR 7–8).  On January 25, 2021, the

Appeals Council denied plaintiff's request for review.  *Id.* at 6–11  (AR 1–6).  Plaintiff has

exhausted the proceedings before the Commissioner and now seeks judicial review and reversal

of the final decision denying her Disability Insurance Benefits and Supplemental Security

Income.

## II.     Legal Standard

### A.      Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to

conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with

or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the

Commissioner's denial of benefits is limited to this question: Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (quotation cleaned up). While courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up). But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When courts decide whether substantial evidence supports the Commissioner's decision, they "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id.* (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such failure justifies reversal only in "'appropriate circumstances'"—in other

words, applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See, e.g.*, *Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### B.    Disability Determination

Claimants seeking Disability Insurance Benefits and Supplemental Security Income bear the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and 20 C.F.R. § 416.920 (governing claims for supplemental security income)). As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the

sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (quotation cleaned up); *accord* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).  The claimant must bear the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'"  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

## III.    Analysis

The ALJ found that plaintiff has the following severe impairments:  left shoulder adhesive capsulitis, status post ORIF of the left elbow in February 2019, diabetes, obesity, and osteoarthritis of the knees.  Doc. 9 at 23 (AR 18).  Also, the ALJ found that plaintiff has the following non-severe impairments:  history of sinus infections, hypertension, history of vertigo, chronic diarrhea, and depression.  *Id.*  But, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets the severity of one of the listed impairments in 20 C.F.R. pt. 404.  *Id.* at 24–25 (AR 19–20).  Instead, the ALJ determined that plaintiff has the RFC "to perform light work as defined in" 20 C.F.R. §§ 404.1567(b) and 416.967(b).  *Id.* at 25 (AR 20).  Specifically, the ALJ found that:

> [T]he claimant is limited to occasionally climbing stairs, but never climbing ropes, scaffolds or ladders.  She can occasionally, balance, crouch, kneel but must never crawl.  The claimant is limited to frequent reaching in all directions but no overhead reaching.  She must avoid prolonged exposure to vibrating machinery and must avoid unprotected heights and hazardous moving machinery.

*Id.* Based on this RFC finding, the ALJ determined that plaintiff was capable of performing past relevant work as a Customer Service Representative, Accounting Clerk, and Secretary. *Id.* at 28 (AR 23). The ALJ explained that the work of those jobs "does not require the performance of work-related activities precluded by" plaintiff's RFC, as delineated in 20 C.F.R. §§ 404.1565 and 416.965. *Id.*

Plaintiff challenges the Commissioner's findings in three ways. Plaintiff argues that: (1) the ALJ erred at step one in the evaluation process because his conclusion that plaintiff engaged in substantial gainful activity from August 2017 to December 2017 is not supported by substantial evidence; (2) the ALJ's RFC is not supported by substantial evidence; and (3) the ALJ's step four determination is not supported by substantial evidence because it relied on a flawed RFC. The court addresses each argument, in turn, below.

## A. The ALJ's step one error was harmless.

*First*, plaintiff argues that the ALJ incorrectly found at step one that plaintiff engaged in substantial gainful activity from August 2017 to December 2017. *See* Doc. 9 at 22 (AR 17) ("The claimant engaged in substantial gainful activity during the following periods: August 2017 through December 2017[.]"). The ALJ based his conclusion on earning records reflecting plaintiff had earned income of $15,234.83 in 2017. *Id.* (citing Ex. 5D/4); *see also id.* at 207 (AR 202) (showing plaintiff's earnings in 2017 from General Dynamics). But, plaintiff asserts—and defendant never disputes—that the record establishes that plaintiff consistently reported her last day of work as August 23, 2017—the same day as the onset date of her alleged disability. *Id.* at 39, 42, 195, 225 (AR 34, 37, 190, 220). Thus, the court agrees with plaintiff. The ALJ erred by finding at step one that plaintiff engaged in substantial gainful activity from August 2017 to December 2017, because that finding is not supported by substantial evidence.

But, defendant argues, the ALJ's step one conclusion doesn't require remand because any error in that conclusion is harmless. The court agrees. Plaintiff bears the burden to show that she sustained harm from the ALJ's error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Cox v. Berryhill*, No. 17-2556-JWL, 2018 WL 3575648, at *3 (D. Kan. July 25, 2018) (explaining that "even if the court were to assume an error in" the ALJ's function-by-function assessment, plaintiff had "shown no prejudice resulting from the alleged error"). Here, plaintiff doesn't identify any harm she sustained from the ALJ's step one finding. To the contrary, she concedes that the ALJ didn't stop evaluating her claim after making his step one finding. Doc. 15 at 1; *see also* Doc. 9 at 23 (AR 18). Instead, the ALJ gave plaintiff "the benefit of the doubt" and "continued to the next step of the sequential analysis." Doc. 9 at 23 (AR 18). Thus, the court finds the ALJ committed harmless error in his step one evaluation. And, this harmless error provides no basis to remand the matter to the ALJ.

**B. The ALJ's RFC determination is supported by substantial evidence.**

*Second*, plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff's argument is two-fold. She argues that the ALJ erred by (a) failing to include limitations in the RFC based on the ALJ's finding that plaintiff has the non-severe impairment of depression, and (b) concluding that plaintiff could perform a range of light work because—according to plaintiff—that finding isn't supported by the opinions of plaintiff's treating source, APRN Lisa Russell. The court addresses each argument, in turn, below.

**1. The ALJ sufficiently addressed plaintiff's non-severe impairment of depression in the RFC determination.**

The ALJ found at step two that plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [plaintiff's] ability to perform basic

mental work activities and is therefore nonsevere." Doc. 9 at 23 (AR 18). To make this finding, the ALJ considered each of the four broad functional areas of mental functioning found in the disability regulations used to evaluate mental disorders. *Id.*; *see also* 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). These four areas are known commonly as the "paragraph B" criteria. *See, e.g.*, *Stephanie G. v. Kijakazi*, No. 20-2623-EFM, 2022 WL 266801, at *4 (D. Kan. Jan. 28, 2022) (internal quotations omitted). The "paragraph B" criteria evaluate plaintiff's ability to "[(1)] [u]nderstand, remember, or apply information; [(2)] interact with others; [(3)] concentrate, persist, or maintain pace; and [(4)] adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). The applicable regulations direct ALJs to rate a plaintiff's degree of limitation in each of these four areas by using a "five-point scale: [n]one, mild, moderate, marked, and extreme." *Id.* §§ 404.1520a(c)(4); 416.920a(c)(4). If the ALJ finds "none" or a "mild" limitation, the ALJ generally concludes that the impairment isn't severe. *Id.* §§ 404.1520a(d)(1); 416.920a(d)(1).

The ALJ found that plaintiff here had "no limitation" in the first and fourth criteria—*i.e.*, (1) understanding, remembering, and applying information, and (4) adapting or managing oneself. Doc. 9 at 23–24 (AR 18–19). And, the ALJ determined that plaintiff had "mild limitation in the second and third criteria—*i.e.*, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace. *Id.* Applying the regulations, the ALJ found plaintiff's mild mental impairments weren't severe. *Id.* Plaintiff doesn't challenge that finding. Instead, she argues that the ALJ erred by failing to apply the findings to the RFC.

As support for this argument, plaintiff relies on two cases from our Circuit. Doc. 15 at 2–3 (first citing *Farrill v. Astrue*, 486 F. App'x 711 (10th Cir. 2012); then citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013)). In *Wells*, the Circuit held that an ALJ's finding that plaintiff's

"mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068–69.[2]  Instead, *Wells* concluded, the "ALJ's 'RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts . . . and nonmedical evidence.'" *Id.* at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  And, our Circuit instructed, that discussion "must consider the combined effect of all medically determinable impairments, whether severe or not." *Id.* at 1069.

The ALJ in *Wells* had found that the claimant's mental impairments weren't severe and then stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Id.* at 1069 (quotation cleaned up).  Our Circuit expressed concern that this language suggested "that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments[,]" which would amount to error "under the regulations and the Commissioner's procedures." *Id.*  The Circuit noted, however, that "to some degree[,]" the ALJ "separately discuss[ed] [the claimant's] mental impairments" when developing the RFC. *Id.*  But ultimately, the ALJ's conclusions about the mental RFC assessment weren't supported by substantial evidence, for reasons unrelated to the issue presented here. *Id.* at 1069–71.  So, the Circuit reversed the ALJ's decision and remanded for further proceedings. *Id.* at 1071.  In short, the problem in *Wells* was two-fold:  (1) it was questionable whether the ALJ improperly had "relied on his finding of non-severity as a

---

[2]      As the relevant Social Security Ruling explains, the "paragraph B" criteria that an ALJ uses "to rate the severity of mental impairment(s)" at steps two and three of the disability determination "are not an RFC assessment[.]"  SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (internal quotations omitted). Instead, the ALJ must develop—separate from severity findings—a "mental RFC assessment[,]" which "requires a more detailed assessment" of "various functions contained in the broad categories found in paragraph[ ] B . . . of the adult mental disorders listings[.]" *Id.*

substitute for [an] adequate RFC analysis[;]" and (2), in any event, the ALJ's RFC finding wasn't supported by substantial evidence.  *Id.*

Similarly, the ALJ in *Farrill* erred because he "never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations." 486 F. App'x at 713.  The Circuit noted that the ALJ had found at step two that the claimant's "depression was a medically determinable impairment resulting in mild limitations in certain areas of functioning."  *Id.*  And, the ALJ correctly recognized that "the analysis of mental limitations for steps two and three differs from the analysis for steps four and five, and that the latter steps require a more detailed assessment[.]"  *Id.* (quotation cleaned up).  Then, the ALJ asserted that the RFC finding "reflect[ed] the degree of [mental] limitation the undersigned has found."  *Id.*  But critically, the RFC evaluation "never explained why [the ALJ] chose not to include any mental limitations in the RFC," when he previously has assessed "mild limitations" in mental functioning.  *Id.*

Plaintiff contends that the ALJ here failed to incorporate her non-severe mental impairments in the RFC discussion, as both *Wells* and *Farrill* require.  The court is unpersuaded. The facts of those cases differ substantially from the facts here because those cases remanded ALJ decisions failing to address appropriately the mental limitations in the RFC evaluation.  But, that's not what happened here.  In the current case, the ALJ, after finding that plaintiff's mental impairments weren't severe, stated that the "following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  Doc. 9 at 24 (AR 19).  Yes, it's true that this language comes close to the problematic language used by the ALJ in *Wells*.  727 F.3d at 1069; *see also Stephanie G.*, 2022 WL 266801, at *6 (concluding that the exact same statement made by the ALJ here was "very similar to the one that *Wells*

implied would be inadequate").  But, unlike *Wells* (and *Farrill*), the ALJ in this case adequately addressed plaintiff's mental limitations in his RFC discussion and explained why those limitations didn't affect the RFC.  And, while doing so, the ALJ described how the evidence supported his conclusion.

The RFC findings addressed plaintiff's mental impairments, specifically relying on findings by state psychological consultants—Dr. Marsha Toll, Psy.D. and Dr. Jonathan Brandon, Ph.D.—which the ALJ found persuasive.  Doc. 9 at 28 (AR 23).  Both doctors found that plaintiff's mental impairment was non-severe and didn't impose severe work related functional limitations.  *Id.* at 61–62, 90–91 (AR 57–58, 85–86).  The ALJ concluded that those findings comported with the record evidence.  *Id.* at 28 (AR 23).  That record evidence shows plaintiff had depression but medication was helping her depression.  *Id.* at 61–62, 90–91 (AR 57–58, 85–86).  Also, during examinations, she was cooperative, had intact cognitive function, maintained good eye contact, and, at times, displayed appropriate mood and affect.  *Id.*  And, plaintiff was capable of completing personal tasks, household chores, driving, handling her own finances, getting along with others, paying attention, following instructions, and handling changes in routine.  *Id.* at 62 (AR 57).  Dr. Brandon acknowledged plaintiff was diagnosed with mild depression but noted that plaintiff reported that she was taking Prozac, which helps.  *Id.* at 91 (AR 86).  The ALJ found these opinions consistent with the medical evidence which memorializes that plaintiff, while at times was depressed and tearful, also was alert, oriented, and cooperative, and with an intact cognitive function.  *Id.* at 641, 645, 648, 652, 659, 662, 669, 673, 676, 681, 806, 820, 823 (AR 636, 640, 643, 647, 654, 657, 664, 668, 671, 676, 801, 815, 818). Given these findings, the ALJ agreed with Drs. Toll and Brandon that plaintiff had no more than mild mental limitations that did not preclude her from performing light work.  *Id.* at 28 (AR 23).

Plaintiff has cited no record evidence about her mental impairments that the ALJ overlooked.  Instead, plaintiff focuses solely on the ALJ's failure to include in the RFC assessment the mild mental limitations the ALJ found at step two.  But ALJs aren't required to import their "paragraph B" criteria findings into their RFC determinations.  *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014); *Stephanie G.*, 2022 WL 266801, at *5 (noting that "inclusion of some functional limitation in the RFC on the basis of a finding of mild paragraph B limitations is not mandated" (citing *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013))).  Instead, the ALJ must discuss any mental impairments in narrative detail alongside the evidence supporting the ultimate RFC finding.  The ALJ discharged this responsibility here when he formulated plaintiff's RFC.  Doc. 9 at 28 (AR 23).  That the ALJ determined plaintiff's mental impairments didn't produce a work-related functional limitation to include in the RFC doesn't provide a reason to reverse the Commissioner's decision.  *Cf. Bales*, 576 F. App'x at 798 (concluding that "the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case").  Thus, the court concludes, plaintiff's argument that the ALJ failed to incorporate her mental limitations into the RFC doesn't provide a reason to remand.

### 2.  The ALJ's finding that plaintiff has the RFC to perform light work is supported by substantial evidence.

The RFC evaluation by the ALJ concluded that plaintiff has the RFC "to perform light work as defined in" 20 C.F.R. §§ 404.1567(b) and 416.967(b).  Doc. 9 at 25 (AR 20).  The RFC limited plaintiff "to frequent reaching in all directions but no overhead reaching."  *Id.*  Also, it provided that plaintiff "can occasionally, balance, crouch, kneel but must never crawl."  *Id.*  And, the RFC directed that plaintiff "must avoid prolonged exposure to vibrating machinery and must

avoid unprotected heights and hazardous moving machinery." *Id.*  Plaintiff asserts that the RFC

is unsupported by substantial evidence because it conflicts with opinions held by plaintiff's

treating source, APRN Lisa Russell, and is not supported by state medical consultants Dr.

Garland Tschudin and Dr. Matthew Byrnes.  The court addresses the two arguments, separately,

below.  But first, the court recites the governing legal standard for evaluating medical opinions in

a social security claim.

### a.  Standard for Evaluating Medical Opinions

The SSA regulations provide that the Commissioner "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's] medical sources."  20

C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, under these regulations, the "SSA is no longer

required to 'give good reasons in the notice of determination or decision for the weight assigned

to a treating physician's opinion[.]'"  *Melanie Lynne H. v. Saul*, No. 20-1028-JWL, 2020 WL

6262193, at *8 (D. Kan. Oct. 23, 2020) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th

Cir. 2003) and discussing effect of latest regulations for evaluating medical opinions).  Instead,

"the SSA will consider each medical source's opinions using five factors, supportability,

consistency, relationship of source to claimant, specialization, and other factors tending to

support or contradict a medical opinion or prior administrative medical finding."  *Monique M. v.

Saul*, No. 19-1345-JWL, 2020 WL 5819659, at *4 (D. Kan. Sept. 30, 2020) (citing 20 C.F.R. §§

404.1520c(c)(1–5), 416.920c(c)(1–5) (2017)).  The most important factors for evaluating the

persuasiveness of a medical opinion are supportability and consistency.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  An ALJ must consider the supportability and consistency

factors, but the regulations don't require him to consider the other three factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ may discount "[m]edical evidence . . . if it is internally inconsistent or inconsistent with other evidence."  *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (quotation cleaned up).  But, the court may "not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax*, 489 F.3d at 1084 (quotation cleaned up).

The question then for a district court is "whether the ALJ properly applied the regulations to determine the persuasiveness of the evidence based primarily on the supportability and consistency factors as applied to that evidence."  *Monique M.*, 2020 WL 5819659, at *6.  If the ALJ determined the persuasiveness of the evidence properly, "the question remaining is whether substantial evidence in the record (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the ALJ's decision."  *Id.*  "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  The ALJ must explain why he adopts some findings but does not adopt others.  *Id.*

### b.  APRN Russell's Opinion

In August 2020, APRN Russell opined that plaintiff was able to stand, sit, walk, and drive from one to three hours during an eight-hour work day.  Doc. 9 at 832 (AR 827).  Also, she opined, plaintiff was not able to push or pull with her upper extremities, but plaintiff occasionally could bend, squat, reach above her shoulder, use her feet, and drive.  *Id.*  APRN Russell opined that plaintiff could not climb, kneel, or crawl but she was able to lift or carry a

maximum of 10 pounds and occasionally carry small objects. *Id.* And, APRN Russell opined that plaintiff was moderately limited in her ability to perform complex and varied tasks. *Id.*

The ALJ considered APRN Russell's opinions but found them "not supported by explanation, treatment records, the longitudinal records from other treating providers, or the claimant's reported activities of daily living[.]" *Id.* at 28 (AR 23). The ALJ concluded that "[o]bjective examination findings are generally within normal limits" and "nothing in the record . . . support[ed] any greater limitation than that to light exertion work." *Id.*

Plaintiff asserts that the ALJ erred by reaching this conclusion because the objective medical evidence supports APRN Russell's opinions. Plaintiff cites medical records noting pain, tenderness, and decreased range of motion in her left shoulder, left elbow, and knees. Doc. 10 at 22–24. Also, she cites medical records showing she was depressed and tearful. *Id.* at 24–25. Plaintiff asserts that these medical records are consistent with APRN Russell's opinions. Thus, she argues, the ALJ erred by finding APRN Russell's opinions unsupported.

The court disagrees. The ALJ specifically cited portions of the record that he relied on to evaluate the RFC and that also show that APRN Russell's opinions are not supported. For plaintiff's left shoulder, the ALJ recognized plaintiff's reports of pain and numbness. Doc. 9 at 27 (AR 22). But, the ALJ noted that plaintiff reported continued improvement with conservative treatment that included physical therapy and pain medication. *Id.* at 27 (AR 22) (citing Ex. 2F/6, 20, 35); *see also id.* at 340, 354, 360–61, 369 (AR 335, 349, 355–56, 364). Also, the ALJ cited medical records showing some limited range of motion in her shoulder but full strength and sensation. *Id.* at 27 (AR 22) (citing Ex. 2F/27); *see also id.* at 361 (AR 356).

For plaintiff's left elbow, the ALJ noted that plaintiff reported left elbow pain after a fall. *Id.* at 27 (AR 22) (citing Ex. 5F/2); *see also id.* at 429 (AR 424). A CT scan showed evidence of

fractures in her left elbow.  *Id.* at 27 (AR 22) (citing Ex. 5F/3); *see also id.* at 430 (AR 425).

Plaintiff then had surgery on her left elbow.  *Id.* at 27 (AR 22) (citing Ex. 6F/27); *see also id.* at

477 (AR 472).  Afterward, plaintiff followed up with physical therapy to improve her range of

motion.  *Id.* at 27 (AR 22) (citing Ex. 6F/75); *see also id.* at 525–26 (AR 520–21).

For osteoarthritis, the ALJ noted that X-rays showed mild glenohumeral and

acromioclavicular joint osteoarthritis.  *Id.* at 27 (AR 22) (citing Ex. 11F/12); *see also id.* at 800

(AR 795).  But, plaintiff had treated her symptoms with pain medication and injections and had

reported improvement.  *Id.* at 27 (AR 22) (citing Ex. 9F); *see also id.* at 640–683 (AR 635–678).

Also, the ALJ described that plaintiff is able to perform daily living activities such as driving,

cooking, using a computer, and completing household chores, despite the limitations in her upper

extremities.  *Id.* at 27 (AR 22) (citing Ex. 9E/5 & Hearing Testimony); *see also id.* at 42, 49–51,

281–283, 285 (AR 37, 44–46, 276–78, 280).

After summarizing all this evidence, the ALJ explained that he accounted for plaintiff's

upper extremity impairments, consistent with the cited evidence, by limiting plaintiff to light

work with frequent reaching in all directions except no overhead reaching.  *Id.* at 27 (AR 22).

For plaintiff's left knee, the ALJ noted that plaintiff was diagnosed with moderate to

severe tricompartmental osteoarthrosis in March 2017.  *Id.* at 26 (AR 21) (citing Ex. 2F/54); *see*

*also id.* at 388 (AR 383).  The ALJ recognized plaintiff's long-history of knee pain (more than

25 years) and difficulty she experiences when climbing stairs and walking long distances.  *Id.* at

26 (AR 21) (citing Ex. 6F/50); *see also id.* at 500 (AR 495).  But, the ALJ noted, plaintiff could

maintain full-time work during much of that time, despite symptoms with her knee.  *Id.* at 26

(AR 21).  Also, the ALJ recognized that physical examinations showed that plaintiff had

tenderness and grating, but also they showed that plaintiff had minimal swelling and full

strength. *Id.* at 26 (AR 21) (citing Exs. 6F/50; 8F/13); *see also id.* at 500–01, 600 (AR 495–96, 595). Also, the ALJ noted that plaintiff doesn't use an assistive device when walking. *Id.* at 26 (AR 21) (citing Exs. 6F/50–51; 9F/37); *see also id.* at 500–01, 676 (AR 495–96, 595, 671). And, the ALJ explained that he had accounted for plaintiff's knee impairments—as described and shown in the record—by limiting plaintiff to light work with occasional balancing, crouching, kneeling, and climbing stairs, but never climbing ropes, scaffolds, or ladders, and never crawling. *Id.* at 26 (AR 21).

And, for plaintiff's mental impairment, the court already has discussed that the ALJ incorporated the mental limitations into the RFC, and those findings are supported by substantial evidence. *See id.* at 28 (AR 23); *see also supra* Part III.B.1.

In sum, the ALJ's evaluation of plaintiff's RFC is supported by substantial evidence in the administrative record. Although plaintiff cites other record evidence that she says supports APRN Russell's opinions,[3] her arguments essentially ask the court to reweigh the evidence and interpret the evidence in her favor. But, the court can't do that. As our Circuit has recognized, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation cleaned up). And, the court can't "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice

---

[3]     When arguing that the substantial evidence supports APRN Russell's opinion, plaintiff cites a limitation imposed by Dr. Douglas Stull that plaintiff "should avoid loading the elbow and limit weight to 10 pounds." Doc. 9 at 446 (AR 441). But, as defendant correctly explains, Dr. Stull imposed this restriction in March 2019, in a follow-up appointment about six weeks after Dr. Stull had performed surgery on plaintiff's left elbow. *Id*; *see also id.* at 433, 477 (AR 428, 472). Dr. Stull also prescribed physical therapy for plaintiff with a treatment request for "aggressive" range of motion and strengthening. *Id.* at 450 (AR 445). The court agrees with defendant's characterization of Dr. Stull's lifting limitation. It "appears to be a short-term restriction following surgery without any evidence that it was a permanent limitation." Doc. 15 at 15.

had the matter been before it de novo." *Id.* (quotation cleaned up); *see also Victoria Jean G. v. Kijakazi*, No. 20-4053-JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021) (explaining that "the ALJ's rationale must be accepted except when the evidence *compels* a different finding" and recognizing "[t]hat the record evidence might also *support* a different finding is irrelevant").

Instead, the court job's here requires it to determine:  (1) whether the ALJ applied the correct legal standard, and (2) whether the ALJ's factual findings are supported by substantial evidence in the record.  *Lax*, 489 F.3d at 1084.  For the ALJ's conclusion that APRN Russell's opinion is unsupported, the court must decide whether that conclusion is supported by "such relevant [record] evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation cleaned up).  It is.

### c.  Drs. Tschudin and Byrnes's Opinions

The ALJ's RFC determination also considered the opinions of two state medical consultants Dr. Garland Tschudin and Dr. Matthew Byrnes.  Doc. 9 at 28 (AR 23).  The ALJ found those opinions persuasive and "reasonably supported by the objective findings on examination, the nature and scope of [plaintiff's] treatment for these conditions, and [plaintiff's] reports of activities of daily living[.]"  *Id.*  Plaintiff asserts that the ALJ erred by finding that these opinions are supported and, as a consequence, the opinions don't qualify as substantial evidence supporting the ALJ's RFC determination.

Dr. Tschudin's opinion, plaintiff argues, isn't supported because he never examined or treated plaintiff and didn't cite any medical or other evidence to support his opinion.   As already discussed, the "relationship" of the medical source to the social security claimant is just one of the five factors that the Commissioner considers when evaluating a medical source's opinion.  20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).  The two most important factors for evaluating the

persuasiveness of a medical opinion are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations require the ALJ to explain how the ALJ considered those two factors but they don't require the ALJ to explain how he considered the other three factors—including the medical source's relationship with the claimant.  *Id.*  Also, the regulations specifically recite that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, plaintiff hasn't shown that the ALJ erred by finding Dr. Tschudin's opinion persuasive simply because he was a non-treating source.  *Cf. Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 840 (10th Cir. 2020) (affirming ALJ's denial of application for disability insurance benefits and supplemental security income where the "ALJ relied heavily on two state-agency *non-examining* physicians' medical opinions" because they qualified as substantial evidence supporting the RFC determination (emphasis added)).

Also, plaintiff hasn't shown that Dr. Tschudin's purported failure to cite medical or other evidence supporting his opinion requires the court to remand the matter to the ALJ.  Dr. Tschudin's opinion is found in the Initial Disability Determination Explanation which recites findings of fact that include:  plaintiff's reported improvement to her shoulder range of motion with treatment, including physical therapy; some reported knee pain by plaintiff but no swelling and a normal gait; and left arm and knee pain but, despite that pain, plaintiff still could prepare small meals and cook for her family, do laundry, sweep, vacuum, and drive.  Doc. 9 at 59–60 (AR 54–55).[4]  These findings of fact support the limitations that Dr. Tschudin included in his

---

[4]      Plaintiff's Reply argues that this portion of the record is a summary of the medical evidence completed by a non-medical disability adjudicator.  Doc. 15 at 5.  And, plaintiff asserts, the RFC section of the report containing Dr. Tschudin's opinion doesn't cite any medical or other evidence.  *Id.* (citing Doc. 9 at 63–65 (AR 58–60)).  But, plaintiff cites no authority requiring a medical source to cite medical

RFC assessment.  *See id.* at 63–65 (AR 58–60).  Also, as already explained, *see supra* Part III.B.2.b., the ALJ specifically addressed portions of the record containing objective medical and other evidence about plaintiff's medically determinable impairments.  *See* Doc. 9 at 26–27 (AR 21–22) (citing record evidence).  When addressing Dr. Tschudin's opinion, the ALJ specifically explained that he found Dr. Tschudin's opinion persuasive for "the reasons already discussed above" because his opinion was "supported by the objective findings on examination, the nature and scope of the claimant's treatment for these conditions, and the claimant's reports of activities of daily living[.]"  Doc. 9 at 28 (AR 23).  That conclusion is supported by substantial evidence for reasons already discussed.  *See supra* Part III.B.2.b.

Attacking both Dr. Tschudin and Dr. Byrnes's opinions, plaintiff argues that they aren't supported opinions because they attribute plaintiff's limitations to her left shoulder and left knee impairments but fail to consider plaintiff's other severe and non-severe impairments, including the severe impairments of plaintiff's left elbow, diabetes, obesity, and osteoarthritis of both knees.  But, as defendant correctly responds, the ALJ's RFC determination was more limiting than the opinions offered by Drs. Tschudin and Byrnes.  Drs. Tschudin and Byrnes limited plaintiff to reaching with her left arm in front, laterally, and overhead.  Doc. 9 at 76, 93 (AR 71, 88).  But, the ALJ—who considered all of plaintiff's severe and non-severe medical impairments—limited plaintiff to frequent reaching in all directions but no overhead reaching. *Id.* at 25–28 (AR 20–23).  Plaintiff fails to show that the ALJ's evaluation of plaintiff's RFC— one that concluded plaintiff is capable of performing light work with certain limitations—doesn't

---

or other evidence in the source's opinion.  Instead, the regulations require the ALJ (not the medical source) to explain how the ALJ considered the supportability and consistency factors when evaluating the medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Here, the ALJ discharged that duty by explaining why Dr. Tschudin's opinion was supported by and consistent with the medical and other record evidence.

accommodate her other severe and non-severe impairments. And, she fails to show that the ALJ

erred by finding Drs. Tschudin and Byrnes's opinions persuasive while adopting limitations

more favorable than the ones imposed by those state medical consultants. *See Chapo v. Astrue*,

682 F.3d 1285, 1288 (10th Cir. 2012) ("[W]e are aware of no controlling authority holding that

the full adverse force of a medical opinion cannot be moderated favorably in this way unless the

ALJ provides an explanation for extending the claimant such a benefit."); *Davidson v. Berryhill*,

No. 17-2139-JWL, 2018 WL 1412064, *11 (D. Kan. Mar. 20, 2018) (concluding that the ALJ's

acceptance of diagnosis but disagreement with physician's functional limitations "is not

substituting her medical experience for that of" the physician but instead "is making an

administrative evaluation of the evidence").

Finally, plaintiff asserts that the ALJ erred because he found Dr. Tschudin's opinion

persuasive but then failed to adopt his opinion in its entirety or explain why he wasn't adopting

the entirety of the opinion. Plaintiff asserts that Dr. Tschudin's opinion—one limiting plaintiff to

reaching with her left arm in front, laterally, and overhead, Doc. 9 at 76, 93 (AR 71, 88)—

conflicts with the ALJ's findings in the RFC evaluation that limited plaintiff to frequent reaching

in all directions but no overhead reaching, *id.* at 25–28 (AR 20–23). Plaintiff correctly asserts

that, if the RFC conflicts with an opinion from a medical source, the ALJ must explain why the

ALJ didn't adopt the opinion. SSR 96-8p, 1996 WL 374184, at *7. But, plaintiff never explains

adequately how the RFC conflicts with Dr. Tschudin's opinion. Critically, Dr. Tschudin's

opinion only opined that plaintiff was "[l]imited" in reaching, and it never opined that plaintiff

*never* could reach at all. Doc. 9 at 76 (AR 71); *cf. id.* (opining that plaintiff "never" could climb

ladders, ropes, and scaffolds). The ALJ accounted for those limitations by limiting plaintiff to

frequent (as opposed to constant) reaching in all directions and no overhead reaching with either

arm.  *Id.* at 25 (AR 20).  Plaintiff simply fails to show that Dr. Tschudin's limitations conflict

with the RFC assessment.  *See Alexandria P. v. Saul*, No. 19-1113-JWL, 2020 WL 1166187, at

*3 (D. Kan. Mar. 11, 2020) (concluding that "it defies logic to imagine" that the medical

source's opinion limiting plaintiff to understanding and remembering "instructions or tasks in

*unskilled work* that require only 1–2 steps" did not "also fit within the [RFC's] descriptors

'simple, routine and repetitive'" and recognizing that the "'possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's findings

from being supported by substantial evidence'" and the court "'may not displace the agency's

choice between two fairly conflicting views, even though the court would justifiably have made

a different choice had the matter been before it de novo'" (quoting *Lax*, 489 F.3d at 1084)).

In sum, the court finds that the ALJ didn't err by finding Drs. Tschudin and Brynes's

opinions persuasive.  Instead, the ALJ's conclusion that "these opinions are reasonably supported

by the objective findings on examination, the nature and scope of [plaintiff's] treatment for these

conditions, and [plaintiff's] reports of activities of daily living[,]" is supported by substantial

evidence.  Doc. 9 at 28 (AR 23).  Plaintiff's arguments about the ALJ's assessment of the

medical opinions when evaluating plaintiff's RFC provide no basis for remand.

### C.  The ALJ's step four determination is supported by substantial evidence.

*Third*, plaintiff argues that the ALJ erred at step four because his finding at this step isn't

supported by substantial evidence.  At step four, the ALJ determined that plaintiff is capable of

performing past relevant work as a Customer Service Representative, Accounting Clerk, and

Secretary.  Doc. 9 at 28 (AR 23).  To reach this conclusion, the ALJ relied on testimony of a

vocational expert (VE), who testified that plaintiff would be able to perform the requirements of

those three jobs with the RFC as assessed by the ALJ.  *Id.* at 28–29 (AR 23–24).  Plaintiff asserts

that VE testified inconsistently with the *Dictionary of Occupational Titles* (DOT).  Plaintiff

argues that her past work requires occasional or frequent reaching.  *See, e.g.*, Customer Service

Representative, DOT 241.367-014, 1991 WL 672252 (4th ed. 1991) (requiring occasional

reaching); Accounting Clerk, DOT 216.482-010, 1991 WL 671933 (4th ed. 1991) (requiring

frequent reaching); Secretary, DOT 201.362-030, 1991 WL 671672 (4th ed. 1991) (requiring

frequent reaching).  But, plaintiff asserts, because the ALJ limited plaintiff to no overhead

reaching, Doc. 9 at 25 (AR 20), the VE testified inconsistently with the DOT that plaintiff was

capable of performing these three jobs.

      And yet, the record shows that the ALJ specifically asked the VE about overhead

reaching during her testimony.  Doc. 9 at 53 (AR 48).  The VE explained that overhead reaching

is not covered by the DOT.  *Id.*  So, the VE testified, she based her responses on her

"professional education and experience."  *Id.*  As our court has recognized, this type of

testimony, "supplementing information contained in the DOT which deals with a broad range of

abilities and positions throughout the economy, is the very purpose for having VE testimony."

*Robert Lee M. v. Saul*, No. 18-2444-JWL, 2019 WL 3079384, at *16 (D. Kan. July 15, 2019).

So, by asking the VE questions about overhead reaching, the ALJ properly "elicit[ed] a

reasonable explanation about the conflict before" relying "upon the vocational expert's

testimony as substantial evidence."  *Fletcher v. Kijakazi*, No. 18-2085-KHV, 2021 WL 3849413,

at *10 (D. Kan. Aug. 27, 2021) (citing *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999));

*see also* SSR 00-4p, 2000 WL 1898704, at *7 (Dec. 4, 2000) ("When there is an apparent

unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a

reasonable explanation for the conflict before relying on the VE or VS evidence to support a

determination or decision about whether the claimant is disabled.").

Even so, plaintiff asserts that the VE's testimony conflicts defendant's Programs

Operations Manual (POMS) which defines "reaching" as "[e]xtending the hands and arms in any

direction." Social Security Administration, Program Operations Manual System (POMS), DI

25001.001 Medical and Vocational Quick Reference Guide (July 11, 2022),

https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001. Plaintiff asserts that this definition,

defining reaching "in any direction[,]" necessarily includes overhead reaching—something that

the RFC limits plaintiff from performing. *See* Doc. 9 at 25 (AR 20) ("The claimant is limited to

. . . no overhead reaching."). Defendant asserts that plaintiff's argument is foreclosed by *Segovia*

*v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007). The court agrees.

Similar to plaintiff here, the *Segovia* plaintiff argued that the VE's testimony conflicted

with the DOT because the job descriptions in the DOT and the Selected Characteristics of

Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) required reaching

capabilities beyond those that the ALJ assessed in plaintiff's RFC. *Id.* at 803. When addressing

this argument, our Circuit recognized that the job descriptions required frequent reaching while

the RFC limited plaintiff to occasional overhead reaching. *Id.* at 804. And, our Circuit noted,

the SCO defined "reaching" as "[e]xtending hand(s) and arm(s) in any direction" but did not

"separately classify overhead reaching." *Id.* (quotation cleaned up). But, the Circuit found that

"under the SCO, even a job requiring frequent reaching does not necessarily require more than

occasional overhead reaching." *Id.* And, it recognized that the "VE was aware of [plaintiff's]

limitations on overhead reaching, and he testified both that she could perform the jobs he

identified and that his opinion of the jobs open to her was consistent with the DOT's

specifications." *Id.* The Circuit explained, in those circumstances, the "VE's testimony does not

conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to

this specific case." *Id.* Also, the DOT descriptions for the job positions didn't "indicate that these jobs predominantly involve overhead reaching rather than other types of reaching." *Id.* Thus, the Circuit concluded, the VE's testimony that plaintiff could perform the identified jobs "constitute[ed] substantial evidence supporting the Commissioner's decision to deny benefits." *Id.*

Likewise here, the VE identified three jobs that plaintiff could perform that require occasional or frequent reaching under the DOT definitions. The RFC here doesn't completely prohibit plaintiff from reaching. Instead, it limits plaintiff to frequent reaching in all directions and to no overhead reaching. The record shows that the "VE was aware of [plaintiff's] limitations on overhead reaching, and [she] testified both that [plaintiff] could perform the jobs [she] identified and that [her] opinion of the jobs open to her was consistent with the DOT's specifications." *Id.*; *see also* Doc. 9 at 52–55 (AR 47–50). So, like the Circuit found in *Segovia*,[5] the VE's testimony here "does not conflict with the DOT and [POMS] so much as it clarifies how their broad categorizations apply to this specific case." *Id.* And, as a consequence, the VE's testimony that plaintiff could perform the three identified jobs "constitutes substantial evidence supporting the Commissioner's decision to deny benefits." *Id.*; *see also Fletcher*, 2021

---

[5]     Our court has recognized that *Segovia* "is an unpublished decision and therefore not binding on this court[.]" *Robert Lee M.*, 2019 WL 3079384, at *16. But, it is "well-reasoned and is a decision of the Tenth Circuit[,]" and thus, is "more persuasive to this court" than out-of-Circuit authority cited by plaintiff. *Id.* Here, plaintiff cites an out-of-Circuit district court case from Arizona to argue that *Segovia* is not precedential. Doc. 15 at 8 (citing *Marquez v. Astrue*, No. CV-11-339-TUC-JGZ-DTF, 2012 WL 3011778, at *3 (D. Ariz. May 2, 2012)). Also, plaintiff cites a Colorado case where the court noted *Segovia* is "unpublished and has no precedential value" and thus refused to apply *Segovia* in a case where the ALJ never identified a discrepancy between the job description and the RFC and never resolved it in the administrative decision. *Id.* (citing *Headley v. Colvin*, No. 13-cv-029889-WYD, 2015 WL 152261, at * 8 & n.5 (D. Colo. Mar. 31, 2015)). *Headley* simply isn't like the facts presented here.

        As Judge Lungstrum recognized in *Robert Lee M.*, the court recognizes here that *Segovia* is not binding authority because it is an unpublished opinion. *Robert Lee M.*, 2019 WL 3079384, at *16. Nevertheless, it also is a "well-reasoned" decision issued by our Circuit. *Id.* So, the court finds it persuasive to the analysis here.

WL 3849413, at *10 (holding that "[b]ecause the vocational expert addressed any conflict" between the jobs requiring frequent reaching and plaintiff's RFC that limited him to occasional reaching overhead, "the vocational expert's testimony constitutes substantive evidence" supporting the ALJ's decision); *Bronson v. Astrue*, 530 F. Supp. 2d 1172, 1187–88 (D. Kan. 2008) (concluding that RFC requiring claimant to "avoid overhead lifting and reaching" does not preclude a claimant from lifting and reaching that does not constitute overhead lifting and reaching and finding "no error in accepting the representative jobs suggested by the VE" that required constant or frequent reaching). For these reasons, the court finds no reversible error at step four.

## IV.    Conclusion

After considering the briefs submitted and conducting its own review of the administrative record, the court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income is affirmed. The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 26th day of September, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**